# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA KALEB YOUNGERMAN,<br><br>Defendant. | Crim. Action No. 23-269 (TJK) |

### MR. YOUNGERMAN'S MOTION TO SUPPRESS STATEMENTS

Mr. Joshua Youngerman, through undersigned counsel, respectfully requests that this Court suppress statements taken in violation of his Fifth and Sixth Amendment rights and in violation of his *Miranda* rights.

### STATEMENT OF FACTS

On June 28, 2021, FBI agents showed up unannounced at Mr. Youngerman's residence. He was not home at the time. Agents spoke to his mother Rebecca Youngerman. They indicated that they wished to speak to Mr. Youngerman about the events of January 6, 2021, in Washington D.C. The next day, Mr. Youngerman went to the FBI field office in Sorrento Valley, California. Mr. Youngerman did not speak to agents that day, however, FBI agents called him later in the day and asked him to return to the FBI office. Believing that he did not have a choice in the matter, Mr. Youngerman complied. On the following day he presented himself at the office.

Before entering the office, Mr. Youngeman was subjected to security measures including a physical search of his belongings, which were also xray-ed. Mr. Youngerman had take all the items out of his pockets, remove his belt, and pass to through a metal detector in the presence of FBI agents. Mr. Youngerman was escorted into the office and could not leave without an escort.

Mr. Youngerman was not told he would be free to leave at any time, or at the end of the interrogation.

At the time, Mr. Youngerman was 21 years old. He had never had any previous law enforcement contact. He was not read his Miranda rights. He did not know that he could have a lawyer present with him. If he had known, he would have sought legal counsel before speaking to the FBI. Unwarned, Mr. Youngerman was asked about his involvement at the Capitol on January 6, 2021, and he answered the FBI's questions. No recording of this conversation was provided to the defense.

Two years later, on July 25, 2023, Mr. Youngerman was arrested by FBI at a 7-11 in Imperial Beach, California. On this occasion, Mr. Youngerman was read his Miranda rights. For reasons unknown to the defense this initial interaction was not recorded; however, it is clear from subsequent recorded conversations that Mr. Youngerman asked for an attorney. He then asked to speak with his father. The agents permitted Mr. Youngerman to speak with his father so long as the call was on speakerphone so that they could monitor the conversation. During this conversation, Mr. Youngerman asked his father to start looking for a lawyer to represent him. This conversation was not recorded. Immediately after Mr. Younegrman's conversation with his father, the agents sought to have Mr. Youngerman waive the right he had just unequivocally invoked:

> **AGENT PRICE**: Today is July 25th. The time is 12:07. Special agent Erica Price. Special Agent Kelsey Randall are present with subject Joshua Youngerman.
>
> **AGENT PRICE:** Hi
>
> **YOUNGERMAN:** Hi
>
> **AGENT PRICE:** So, I know originally at 7-11 you said you didn't want to speak to us without an attorney present. Totally your right to do so. Then after your conversation with dad, dad said to give a little bit of information--
>
> **YOUNGERMAN:** I'll give a little bit.
>
> **AGENT PRICE:** Ok. So you're willing to speak to us, even after you originally said—

>**YOUNGERMAN:** Yeah.
>
>**AGENT PRICE:** Ok. And again, during that conversation we'll read you your rights.
>
>**YOUNGERMAN:** Yes
>
>**AGENT PRICE:** We'll make sure you fully understand all of that. And again, during the conversation if you don't want to answer any questions totally your right to do so—
>
>**YOUNGERMAN:** Ok.
>
>**AGENT PRICE:** Ah. Ok. So then-- we are going to take you so you're more comfortable so you're not sitting here in the back of this tiny vehicle, we're going to take you down to the Sherriff's office, um, on Imperial County somewhere, ah
>
>**AGENT RANDALL:** it's just down the street
>
>**AGENT PRICE:** Yeah, it's not a far drive. And then, so we'll meet with you there and we'll discuss then
>
>**YOUNGERMAN:** Ok.
>
>**AGENT PRICE:** Ok. Sound good?
>
>**AGENT RANDALL:** Mr. Youngerman? [Unintelligible] We don't want your guns, we just want to make sure they're safe. Where are they?
>
>**YOUNGERMAN:** The riffle is locked up--
>
>**AGENT PRICE:** The time is 12:08. Ending the recording.

Exhibit A, *Pre-Interrogation Recording July 25, 2023*.

After taking Mr. Youngerman to the Sheriff's station, agents Randall and Price interrogated Mr. Youngerman. They did not scrupulously honor his initial request for an attorney. They did not immediately re-read him his rights. Rather, they stated that Mr. Youngerman's father had given permission for him to answer questions without a lawyer:

>Q: Okay. It is July 25th, 2023. It is approximately 12:20 pm east- or Pacific Standard Time. Present is Special Agent (Kelsey Randall) and (Erica Price) and then Joshua Youngerman.
>
>A: Mm-hm.
>
>Q: As previously mentioned, um, we picked you up at 7-Eleven. Um, might I ask if, um, (Devin) can (unintelligible).

> Q1:     Yeah.
>
> Q:      Um, we picked you up at 7-Eleven. You told us there that you don't want to speak to us without an attorney. Um, and then we let you speak with your father on the phone, and he said, you know, certain questions you're more than welcome to answer without an attorney.
>
> A:      Mm-hm.
>
> Q:      We asked you again, if that is indeed what you want, you said, yes, you'd be willing to speak to us up to a certain extent, uh, so we brought you down here in order to do so. Um, I have shown you the arrest warrant, went over your charges with you...
>
> A:      Yeah.
>
> Q:      ...and your father. Um, and then so (Erica) is going to go ahead and get started with some of your basic information, just to confirm. Thanks, (Devin).

Exhibit B, *Transcript of July 25, 2023, Interrogation* at 1.

## LEGAL AUTHORITY

It is axiomatic that all custodial interrogations must be preceded by the warnings laid out by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966). A person is in custody for Miranda purposes if, under the totality of the circumstances a reasonable person would "have felt he or she was not at liberty to terminate the interrogation and leave," *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), or if the circumstances "present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012)   In making this determination, the Court must consider the following factors: "the location of the questioning, statements made during the interview, the presence of physical restraints, and whether the interview was released once the interrogation ended." *United States v. Cooper*, 949 F.3d 744, 749 (D.C. Cir. 2020) citing *Howes*, 565 U.S. at 509.

If a person "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning." *Miranda*, 384 U.S. at 444-45. A

defendant subject to a custodial interrogation must invoke his Fifth Amendment right to counsel clearly and unambiguously. *Davis v. United States*, 512 U.S. 452, 459 (1994). A person who invokes their right to counsel cannot be interrogated until an attorney is actually present. *Minnick v. Mississippi*, 498 U.S. 146, (1990). Where the initial invocation is clear, "the police my not create ambiguity in defendant's desire by continuing to question him or her about it." *Connecticut v. Barrett*, 479 U.S. 523, 535 n.5 (1987) (Brennan, J. concurring).

## ARGUMENT

### A. Mr. Youngerman's un-Mirandized statements in June 2021 were custodial and should be suppressed.

In June of 2021, Mr. Youngerman was 21 years old. He had never been in trouble with the law, much less ever spoken to an FBI Agent. When he learned that the FBI had been to his home, had spoken to his mother, and wanted to speak to him he did not feel that he could refuse. After establishing contact with Mr. Youngerman, the agents summoned him to the FBI office.

Once there, Mr. Youngerman was not free to leave of his own free will. The San Diego FBI Field Office is not a place the public can enter or leave on their own. Before entering the office, Mr. Youngeman was subjected to security measures. His belongings physically searched and subjected to xray. He was required take all the items out of his pockets, remove his belt, and pass to through a metal detector. Mr. Youngerman needed an escort into the office and to leave the office. He was bound to remain there for as long as the agents wanted. Mr. Youngerman was not told he would be free to leave at any time, or at the end of the interrogation.

This circumstance presents a "serious risk of coercion." *Cooper*, 949 F.3d at 749. Indeed, the environment Mr. Youngerman faced at the FBI field office presents "the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509.

Because Mr. Youngerman, was interrogated in an inherently coercive environment and he reasonably did not feel free to leave, the agents were obligated to provide him with *Miranda*

warnings. They failed to do so; therefore, Mr. Youngerman's June 2021 statements should be suppressed.

**B.    Mr. Youngerman's post-arrest statements in July 2023 were taken in violation of *Miranda* and his right to counsel and should be suppressed.**

After his arrest on July 25, 2023, it is apparent that Mr. Youngerman unambiguously invoked his right to counsel. The agents reference that invocation multiple times as they simultaneously fail to honor it. Rather, the agents suggested that Mr. Youngerman's consultation with his father was good enough:

> **AGENT PRICE:** So, I know originally at 7-11 you said you didn't want to speak to us without an attorney present. Totally your right to do so. Then after your conversation with dad, dad said to give a little bit of information--

Exhibit A.

> Q: Um, we picked you up at 7-Eleven. You told us there that you don't want to speak to us without an attorney. Um, and then we let you speak with your father on the phone, and he said, you know, certain questions you're more than welcome to answer without an attorney.

Exhibit B, at 1.

Mr. Youngerman's father is not an attorney. His advice cannot substitute for the advice that Mr. Youngerman requested and that he is guaranteed by the Fifth and Sixth Amendments. Because Mr. Youngerman unambiguously invoked his right to counsel, the agents were not empowered to ask him to reconsider, even after talking to his dad. They were obligated to scrupulously honor Mr. Youngerman's right. They did not. Mr. Youngerman's July 2023 statements should be suppressed.

## REQUEST FOR HEARING

Mr. Youngerman requests a hearing on all matters and issues capable of being heard.

## CONCLUSION

For the reasons stated above, Mr. Youngerman respectfully requests that this Court grant his motion and suppress his statements.

Respectfully submitted,

*s/ Lynette M. Belsky*

Dated: June 4, 2024

**LYNETTE M. BELSKY**
California State Bar No. 333942
**SARA M. PELOQUIN**
California State Bar No. 254945
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Lynette_Belsky@fd.org
Sara_Peloquin@fd.org