UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.:  1:23-CR-00269-TJK |
| Plaintiff, | Hon. Timothy J. Kelly |
| v. | MR. YOUNGERMAN'S SUPPLEMENTAL BRIEFING TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS |
| JOSHUA YOUNGERMAN, | |
| Defendant. | |

## **INTRODUCTION**

On June 4, 2024, Mr. Youngerman moved this Court to suppress statements taken in violation of his Fifth and Sixth Amendment rights and in violation of his *Miranda* rights. *See* ECF No. 33. On June 18, 2024, the government filed a Memorandum in Opposition. *See* ECF No. 43. On June 25, 2024, Mr. Youngerman filed a reply to the government's opposition. *See* ECF No. 45. On June 26, 2024, the government filed a supplement to its opposition. *See* ECF No. 47. In its supplement, the government informed the Court that it "became aware of the existence of body-worn camera footage of the defendant at the time of his July 25, 2023 arrest." *Id.* at 1.[1] Mr. Youngerman's supplemental briefing now follows.

## **STATEMENT OF FACTS**

Mr. Youngerman refers the Court to the factual basis in his Motion to Suppress Statements. *See* ECF No. 33. Mr. Youngerman additionally provides the following statement of facts based on

---

[1] The government's supplemental briefing notably does not provide any information about when the government made its first attempt to acquire the body-worn camera (BWC) footage, or an explanation for why the BWC footage was not provided before June 26, 2024, which was approximately eleven months after Mr. Youngerman's arrest.

the recently produced BWC footage.[2]

On July 23, 2024, after his arrest in the instant offense, Mr. Youngerman asked for permission to call his mother because he **did not "want to be questioned without an attorney present."** *See* Government's Exhibit 4, 4:35. Later, Mr. Youngerman again asked to call his mother, adding that he would also like to tell his dad to "**get a lawyer**." *Id.* at 39:20. In his call with his mother and father, he says, "**get an attorney ready**," and "**I am not gonna speak to them unless I have an attorney present**." *Id.* at 40:23-41:00. When Agent Randell spoke to Mr. Youngerman's father, his father asked questions about what evidence the government had to support the allegations in the warrant. Agent Randell responded that because Mr. Youngerman "refused to speak to us without a lawyer present…umm.. so until we have attorneys present," she was not willing to give information. *Id.* at 43:32.

Thereafter, when Mr. Youngerman continued to speak with his father, there was discussion about whether Mr. Youngerman should speak to the agents with an attorney. His father, who is not an attorney, stated "so just answer what you think you can answer, otherwise wait for legal representation, they have the right to search so..." *Id.* at 43:50. Mr. Youngerman then asked, "**so how will I go about that though [getting legal representation]**, so, I mean…I've never been in this situation before." *Id.* His father responded that he "will figure that out," and he will see "what he can find," because he is not sure that a California public defender would be Mr. Youngerman's "best help." *Id.* at 44:18. The last words that Mr. Youngerman said to his father were "**call an attorney**." *Id.* at 46:03.

---

[2] Undersigned counsel refers the Court to Government's Exhibit 4. The portions of the conversation(s) provided in the Statement of Facts are what undersigned counsel deemed most relevant to the motion to suppress and are not intended to reflect the entirety of the BWC footage.

## ARGUMENT

## I.     MR. YOUNGERMAN'S POST-ARREST STATEMENTS WERE TAKEN IN VIOLATION OF *MIRANDA* AND WERE INVOLUNTARY UNDER THE DUE PROCES CLAUSE.

For the reasons outlined below (and in Mr. Youngerman's previous filings), Mr. Youngerman's post-arrest statements should be suppressed.

### A.     MR. YOUNGERMAN UNAMBIGUOUSLY INVOKED THE RIGHT TO COUNSEL, AND NOTHING ABOUT MR. YOUNGERMAN'S CONVERSATION WITH HIS FATHER PERMITTED AGENTS TO REINITIATE QUESTIONING WITH MR. YOUNGERMAN.

When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if the accused has been advised of his rights. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). An accused who invokes his right to counsel, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Id. Edwards* has created a "brightline, prophylactic" rule barring police interrogation of a subject who has invoked his right to counsel unless the subject initiates further communications with police. *Arizona v. Roberson*, 486 U.S. 675, 681-82 (1988). A heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived the privilege against self-incrimination and the right to appointed counsel. *See Miranda*, 384 U.S. 436, 475 (citing *Escobedo v. Illinois*, 378 U.S. 478, 490, n. 14).

In this case, Mr. Youngerman's invocation was unambiguous. Shortly after Mr. Youngerman was told he would be questioned by agents, he inquired whether he could contact his mom (and dad) to get a lawyer for him because he did "not want to be questioned without an attorney present." The government concedes that this was an invocation by Mr. Youngerman. *See* ECF No. 47, p. 2.[3] As soon as Mr. Youngerman unambiguously invoked his right to counsel, all

---

[3] From the time Mr. Youngerman initially invoked his right to counsel to the end of his conversation with his father, he made at least 5 statements indicating that he wanted an attorney.

further questioning should have ceased. *See e.g.*, *Smith v. Illinois*, 469 U.S. 91, 97 (1984) (deeming a suspect's statement, "Uh yeah, I'd like to do that," upon hearing of his right to counsel a clear invocation). The agents also understood Mr. Youngerman's invocation as unambiguous, evidenced by Agent Randall's statement to Mr. Youngerman's father (where she stated that Mr. Youngerman "refused" to speak with the agents "without a lawyer present").

In spite of his unambiguous invocation of his right to counsel, Mr. Youngerman was questioned by agents, in violation of *Miranda*. The government argues that Mr. Youngerman "voluntarily initiated communications with law enforcement and waived his rights." ECF No. 43, 19. However, there is no evidence that Mr. Youngerman initiated communication with agents after the phone call with his father. The recordings of Mr. Youngerman's interactions with the agents show that Mr. Youngerman *repeatedly* requested the presence of counsel for questioning. Indeed, he ended the phone call with his father by stating "**call an attorney.**" The agents were under an obligation to cease all further questioning unless Mr. Youngerman reinitiated communication with the agents, and because he did not do so, his statements were taken in violation of *Miranda*.

Without providing any evidence that Mr. Youngerman was the one to initiate contact with the agents after his invocation, the government asks this Court to accept its assertion as fact. The government also asserts that "after speaking with his parents, [Mr. Youngerman] changed his mind, and agreed to be interviewed by the agents." ECF No. 43, p.4. However, the government's evidence does not support the conclusion that Mr. Youngerman changed his mind following the conversation with his father without any prompting or pressure by the agents.

To the contrary, the Government's Exhibit 4 shows that after Mr. Youngerman's call with his father, Agent Randall's intentions were to attempt to interview Mr. Youngerman, even though he had already invoked. In Government's Exhibit 4, Agent Randall can be heard telling the sheriff "If he [Mr. Youngerman] is willing to talk, are you cool with taking [Mr. Youngerman] to imperial?" Government's Exhibit 4, at 51:32. Less than a minute later, the sheriff can be heard telling another sheriff "Hey I am going to take [Mr. Youngerman] back. They [the FBI] are going to *try* to interview him, I don't know *if* he's going to talk or not." Government's Exhibit 4, at 51:57. The interaction between Agent Randall and the sheriff show Agent Randall's intent to continue to try to interview Mr. Youngerman despite his (repeated) unambiguous invocations. It is clear Agent

Randall hoped that they could convince Mr. Youngerman to speak with them based on Mr. Youngerman's conversation with his father. Agent Randall knew that Mr. Youngerman had invoked, and instead of respecting that invocation and waiting for the presence of counsel, Agent Randall elected to ignore Mr. Youngerman's invocation and make an additional attempt to convince him to speak with her, even stating that she wanted to make Mr. Youngerman more "comfortable" when she reinitiated questioning. This was all in an effort to improperly interview Mr. Youngerman after he had already repeatedly expressed his intention to have an attorney present during any questioning.

Agent Randall disregarded Mr. Youngerman's invocation and asked him again if he was willing to speak with agents in the absence of counsel. In Government's Exhibit 1, Agent Randall states that Mr. Youngerman invoked when he was arrested, and that subsequently, the agents reinitiated questioning with Mr. Youngerman and if he was wiling to speak to them:

> "As previously mentioned, um, we picked you up at 7/11, um…[unintelligible] um we picked you up at 7/11, you told us there you didn't want to speak to us without an attorney. Um then we let you speak with your father on the phone, and he said you know certain questions you're more than welcome to answer without an attorney. **We asked you again if that is indeed what you want.**"[4]

Government's Exhibit 1 at 00:18-00:41. Agent Randall reinitiated questioning with Mr. Youngerman when she was not permitted to do so. There is no evidence that Mr. Youngerman reinitiated contact with the agents after his phone call with his father. To the contrary, Agent Randall was the one that expressed her intent to attempt to interview Mr. Youngerman (again) and then asked Mr. Youngerman again if he was willing to speak to the agents without counsel. Pressuring Mr. Youngerman to speak to the agents without counsel when he had already unambiguously and repeatedly invoked his right to counsel was in clear violation of *Miranda*. Mr. Youngerman's statements were made without the presence and assistance of counsel, in clear violation of *Miranda*. Thus, Mr. Youngerman respectfully requests that this Court suppress the statements.

---

[4] Undersigned counsel refers the Court to Government's Exhibit 1. The transcription of what Agent Randall said is undersigned counsel's best attempt to transcribe Agent Randall's statements, however, the best evidence of what Agent Randall said is Government's Exhibit 1.

**B.     MR. YOUNGERMAN'S STATEMENTS SHOULD BE
SUPPRESSED BECAUSE THEY WERE TAKEN INVOLUNTARILY
UNDER THE DUE PROCESS CLAUSE.**

Any use of a defendant's involuntary statement is a denial of due process. *Bradford v. Davis*, 923 F.3d 599, 615 (9th Cir. 2019) (citing *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978). Under the Due Process Clause, a defendant's statements must be voluntary to be admissible. *Oregon v. Elstad*, 470 U.S. 298, 304-05 (1985). The government bears the burden to prove by a preponderance of the evidence that a confession was given voluntarily. *Lego v. Twomey*, 404 U.S. 477, 483-84 (1972). To do so, the government must show that the statement was the "product of a rational intellect and free will." *Blackburn v. Alabama*, 361 U.S. 199, 209 (1960).

"[I]n *Edwards v. Arizona*, the Supreme Court reiterated the principle that the 'assertion of the right to counsel [is] a significant event and that once exercised by the accused, the interrogation must cease until an attorney is present.'" *Sessoms*, 776 F.3d at 622 (en banc) (citing *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)) (other citations omitted). "[T]he *Edwards* rule is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights,' *Michigan v. Harvey*, 494 U.S. 344, 350, (1990), and to ensure that officers 'will not take advantage of the mounting coercive pressures of prolonged police custody,' *Maryland v. Shatzer*, 559 U.S. 98, 105 (2010)." *Id.* (citations condensed). In other words, *Edwards* established a "presumption of involuntariness" of subsequent waivers of the right to counsel once that has already been invoked. *Shatzer*, 559 U.S. at 100; *see also Minnick v. Mississippi*, 498 U.S. 146, 160 (1990) (Scalia, J., dissenting) (describing the *Edwards* rule that "a defendant's waiver of his Miranda rights to counsel, made in the course of a police-initiated encounter after he had requested counsel but before counsel had been provided, was per se involuntary.").

Here, Mr. Youngerman's waiver was not made knowingly, voluntarily, or intelligently. Mr. Youngerman unambiguously invoked his right to counsel and after speaking with his father, the agents reinitiated questioning of Mr. Youngerman, in violation of *Miranda*. By doing so, the agents ignored Mr. Youngerman's repeated requests to have counsel present during his questioning. At the time of his arrest, Mr. Youngerman was just 23 years old with no experience in the criminal legal system, and he called his parents for help securing counsel. While on the phone with his father, he asked how to go about getting legal representation, stating that he had never been in this situation before. Mr. Youngerman was picked up by the agents at 7/11 and was

taken by surprise; he was scared and making every attempt to navigate a complex legal procedure. Mr. Youngerman did everything within his power to secure his rights, including invoking his right to counsel and contacting his parents to begin the search for counsel; the agents ignored all of that and proceeded to question him.

Agent Randall's statement to Mr. Youngerman's father was also an attempt to pressure Mr. Youngerman to speak with the agents. When Mr. Youngerman's father inquired about details of Mr. Youngerman's case, Agent Randall responded that she was not willing to give more information *because* Mr. Youngerman had invoked his right to counsel. Agent Randall's statement was intended to psychologically pressure Mr. Youngerman to speak with the agents through his father. Mr. Youngerman had already invoked his right to counsel, so Agent Randall figured that she would try to persuade him to reconsider by suggesting she would share more information about Mr. Youngerman's case if he agreed to speak with the agents. Agent Randall could have merely stated that she was not at liberty to discuss the details of the case, but instead, she specifically elected to use Mr. Youngerman's invocation as the reason for why she could not further discuss the case with his father. Agent Randall's word choice sent a message to both Mr. Youngerman and his father that she would not do certain things because of Mr. Youngerman's choice to invoke his right to counsel.

For the foregoing reasons, Mr. Youngerman's statements were not the product of rational intellect and free will, and the government has not met its burden to show that the statements were made voluntarily.

## **REQUEST FOR HEARING**

Mr. Youngerman requests a hearing on all matters and issues capable of being heard.

Respectfully Submitted,

**LYNETTE BELSKY**
**SARA PELOQUIN**
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
Attorneys for Mr. Youngerman
225 Broadway Ste 900
San Diego, CA 92101
T – (619) 234 8467
F – (619) 687 2666
Lynette_Belsky@fd.org
Sara_Peloquin@fd.org

*/s/ Lynette Belsky*
Lynette Belsky, Trial Attorney

*/s/ Sara Peloquin*
Sara Peloquin, Trial Attorney

## <u>CERTIFCATE OF SERVICE</u>

I hereby certify that on this 22nd date of July 22, 2024, a copy of the foregoing was efiled, served, and/or delivered to counsel of record or case registered parties by the CM/ECF court system.

**LYNETTE BELSKY**
**SARA PELOQUIN**
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
Attorneys for Mr. Youngerman
225 Broadway Ste 900
San Diego, CA 92101
T – (619) 234 8467
F – (619) 687 2666
Lynette_Belsky@fd.org
Sara_Peloquin@fd.org

*/s/ Lynette Belsky*
Lynette Belsky, Trial Attorney

*/s/ Sara Peloquin*
Sara Peloquin, Trial Attorney