UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-cr-269 (TJK) |
| | : | |
| JOSHUA KALEB YOUNGERMAN, | : | |
| | : | |
| Defendant. | : | |

**SUPPLEMENT TO UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendant's Supplemental Briefing to Defendant's Motion To Suppress Statements. ECF No. 52. The United States incorporates, without repeating, its prior arguments and briefing on this motion. *See* ECF Nos. 43, 47. The facts relevant to the defendant's case, his arrest, and his statements to law enforcement are thoroughly summarized in those prior filings.

**ARGUMENT**

The parties do not dispute that, upon his arrest, the defendant invoked his right to counsel. *See* ECF No. 43 at 4. The defendant would like that to be the end of the inquiry, but it is not. *See Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) ("[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*." (emphasis added)). The problem for the defendant—and the fatal flaw that his motion cannot rebut—is that he voluntarily changed his mind. The law protects his right to do so, and that is precisely what he did.

1

The factual record is replete with evidence of the defendant's subsequent waiver of his right to counsel. On the phone call Youngerman had with his father, which is captured on police body-worn camera footage, Youngerman's father advised him, "I'd say answer what you think you can answer, otherwise wait for legal representation." Government Exhibit 4 (43:56–44:04). Youngerman takes up the idea, and he clarified, "OK, so should I answer questions on my own or answer questions with the attorney present?" *Id.* (44:42–44:48). His father again advised him to answer some—but not all—questions. *Id.* (44:48–45:20). Youngerman again clarified, "So, so, yes to answer questions, just be careful I guess, pretty much?" *Id.* (45:21–45:28). His father responded, "Yeah, if anything might incriminate you, like, if they say, 'Did you go in?' Then I wouldn't answer that." *Id.* (43:28–45:37). Youngerman responded, "Yeah." *Id.* (45:37). But, his father counseled, Youngerman should answer "general stuff." *Id.* (45:37–45:42). Youngerman agreed, saying, "OK." *Id.* (45:42–45:44). The agent was present and heard this conversation.[1]

Youngerman's agreement, following a suggestion from his father, that he should answer

---

[1] The United States again emphasizes that the best evidence of the conversation here is the recording, captured in Government Exhibit 4. As the defendant notes, the defendant's father advised him, "I'd say answer what you think you can answer, otherwise wait for legal representation." Government Exhibit 4 (43:56–44:04). The defendant responded, "So how will I go—so how will I go about that though, so, I mean, I've never been in this situation before." *Id.* (44:06–44:12). The defendant chose to present this in his filing as "so **how will I go about that though [getting legal representation]**, so, I mean…I've never been in this situation before." ECF No. 52 at 2 (emphasis in original). But the defendant's bracketed—and emphasized—insertion is a defense invention: Youngerman never said that. His father responded regarding legal representation, but it is not clear what Youngerman's question referred to—securing legal representation, or answering questions. And, in fact, his next statement was about answering questions: "OK, so should I answer questions on my own or answer questions with the attorney present?" Government Exhibit 4 (44:42–44:48). The Court can, and should, rely on the audio and video, which is clear.

questions without a lawyer present "viewed from the perspective of a reasonable officer . . . 'evidenced a willingness and a desire' to reinitiate communications with the FBI concerning the criminal investigation." *United States v. Straker*, 800 F.3d 570, 623 (D.C. Cir. 2015) (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983)).  Unlike the "rigorous" inquiry into whether a waiver was knowing and intelligent, in assessing whether a defendant reinitiated communications, "we ask not what the suspect intended to do," but, instead, the question is "what intention the police officer could reasonably have interpreted the suspect's statements—even if ambiguous—to evince, without any legal presumption one way or the other." *Straker*, 800 F.3d at 623 (quoting *Bradshaw*, 462 U.S. at 1045–46) (cleaned up).  Where there is reason to "inquire whether the suspect was re-initiating communication," law enforcement is justified in engaging in "a limited inquiry to confirm or disaffirm that belief." *Van Hook v. Anderson*, 488 F.3d 411, 428 (6th Cir. 2007) (alterations omitted) (quoting *United States v. Michaud*, 268 F.3d 728, 735 (9th Cir. 2001).  Here, standing next to the agent, the defendant repeatedly received counsel from his father to answer questions from law enforcement; and he audibly agreed to it.

   As if it were not on tape, the defense asserts the "evidence does not support the conclusion that Mr. Youngerman changed his mind following the conversation with his father." ECF No. 52 at 4.  But the recording of the defendant's call with his father is clear.  And even if the call with the defendant's father were not enough, as summarized in the government's earlier opposition, the agents repeatedly advised the defendant on his right to counsel and repeatedly confirmed, on audio recordings, his decision to speak to agents.  *See* ECF No. 43 at 20–22.  The defendant even signed an Advice of Rights form.  *See id.* at 21.  And, as soon as questioning turned to the defendant's

3

approach to the Capitol building, he had a thorough enough understanding of his rights that he refused to answer those questions. *See id.* at 22.

The "prophylactic rule" that law enforcement cannot question a defendant following his invocation of his right to counsel, absent his reinitiating communications, is "designed to protect an accused in police custody from being badgered by police officers." *Bradshaw*, 462 U.S. at 1044. But under the circumstances here, where the agents repeatedly confirmed the waiver, repeatedly reiterated the defendant's right to counsel, and respected his desire not to answer questions about his conduct at the Capitol, there can be no credible argument police engaged in any misconduct or harassment.

The defendant does backflips to find some instance—any instance—of the agent doing something they can characterize as pressuring the defendant to speak. The defendant offers two primary arguments, neither of which survive scrutiny. First, the defendant argues that the agent's attempt to secure office space for a possible interview shows that "*after Mr. Youngerman's call with his father*, [the agent]'s intentions were to attempt to interview Mr. Youngerman." ECF No. 52 at 4 (emphasis added). Rightly so, because that call with his father illustrated to agents Youngerman's intent and willingness to answer questions. There is nothing constitutionally infirm about preparing office space for an interview, particularly after a defendant has expressed his willingness to answer questions without a lawyer, as occurred here.[2] Second, the defendant cites the fact that, when the defendant's father asked the agent whether she had photographs or

---

[2] Remarkably, the defendant even cites the agent's statement that the office space would be more "comfortable" than the back of a police car as evidence of her efforts to pressure the defendant. ECF No. 52 at 5. Tellingly, the defendant does not cite the agent's prior sentences: "And again, during the conversation if you don't want to answer any questions totally your right to do so. You don't have to." Defense Exhibit A.

4

videos of the defendant inside the U.S. Capitol building, the agent responded, "Your son has refused to speak without a lawyer present.  Um, so until we have attorneys present, that's not information I'm willing to give."  Government Exhibit 4 (43:20–43:37).  The defense argues the "statement was intended to psychologically pressure Mr. Youngerman to speak with the agents through his father."  ECF No. 52 at 7.  Not so.  The agent was under no obligation to engage in a one-sided proffer of the government's evidence.  And the agent had, earlier, explained that, in the absence of a voluntary interview, further substantive communications would go between counsel for the defense and counsel for the government.  *See* Government Exhibit A (4:35–5:57).  The agents had repeatedly reiterated to the defendant that he was under no obligation to answer questions from law enforcement, and that he could refuse to answer questions at any time—which he did.  *See id.* (24:05–24:53; 27:01–27:45).

Bad advice or a miscalculation of judgment by the defendant does not render an agent's action invalid under the Constitution.  The defendant was repeatedly advised of his rights, and he repeatedly knowingly and intelligently waived them.  The Court should deny the defendant's motion to suppress.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar Number 481052

By:   */s/ Anthony W. Mariano*
    ANTHONY W. MARIANO
    MA Bar No. 688559
    Trial Attorney, Detailee
    Capitol Siege Section

United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov